IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
BENJAMIN MAPP,                  )
                                )
     Plaintiff,                 )
                                )      CIVIL ACTION NO.
     v.                         )      3:08cv298-MHT
                                )         (WO)
AMERICAN GENERAL ASSURANCE      )
COMPANY,                        )
                                )
     Defendant.                 )
```

OPINION AND ORDER

Plaintiff Benjamin Mapp filed this lawsuit against defendant American General Assurance Company, asserting that it failed to pay benefits due to him after he suffered a heart attack in September 2006.  Mapp originally filed suit in state court, asserting state-law claims of breach of contract and bad faith.  American General removed to this court, contending:  first, Mapp's state-law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461 and thus this court has federal-question jurisdiction; and, second, the court has diversity-of-

citizenship jurisdiction.   Two motions are before the court: Mapp's motion to remand and American General's motion to dismiss.   For the reasons that follow, Mapp's remand motion will be granted and American General's dismissal motion will be left to resolution by the state court after remand.


## I. STANDARD OF REVIEW

A defendant may remove a civil action brought in state court to federal court if the action could have been brought in federal court in the first instance.   28 U.S.C. § 1441(a).   The party seeking removal has, under 28 U.S.C. § 1446, the burden of establishing the court's jurisdiction over the subject matter of the case. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).   Typically, the court's subject-matter jurisdiction is premised on either federal-question jurisdiction or diversity-of-citizenship jurisdiction. A court has federal-question jurisdiction when the case

2

arises under the Constitution, laws, or treaties of the United States, 28 U.S.C. § 1331; it has diversity-of-citizenship jurisdiction when the amount in controversy exceeds $ 75,000 and the plaintiff and the defendant are citizens of different States.  28 U.S.C. § 1332(a).

In a removal action, the burden is on the defendant to plead the basis for jurisdiction.  <u>Fowler v. Safeco Ins. Co. of America</u>, 915 F.2d 616, 617 (11th Cir. 1990). A defendant may submit affidavits, depositions, or other evidence to support removal.  <u>Id</u>. at 617.  Even after removal, either party may move to remand to state court on the basis of any defect in the removal, including lack of subject-matter jurisdiction.  28 U.S.C. § 1447(c).

Federal courts must strictly construe removal statutes "[b]ecause removal jurisdiction raises significant federalism concerns."  <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999) (citation omitted).  Thus, any doubt about jurisdiction is resolved in favor of remand.  <u>Id</u>.; <u>see also Burns v.</u>

<u>Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994)

("where plaintiff and defendant clash about jurisdiction,

uncertainties are resolved in favor of remand").


## II.  BACKGROUND FACTS

In the fall of 2004, Norbord Industries applied for

a group policy with American General for a critical-

illness plan.  Norbord's application form indicated that

all regular full-time employees under the age of 70 would

be eligible for the plan; there would be no waiting

period to be eligible; and the effective date would be

January 1, 2005.  These were the least restrictive

selections possible based on what was laid out on the

application form, which required applicants to select the

class of employees eligible for coverage; the minimum

number of enrolled employees necessary to keep the group

policy in force; an effective date; and any optional

features.  Norbord did not have any input into the terms

of the plan that American General offered to Norbord employees.

Based on Norbord's application, American General issued a group policy. The policy named Norbord the "Policyholder" and indicated that it was a legal contract between American General and the policyholder. It also stated that the plan was "delivered in and governed by the laws" of Alabama. Although it was not apparent from the face of the document, Continental American Insurance Company administered the critical-illness policy on behalf of American General. Continental American's internal records indicated that a Norbord employee was the contact person for any changes to the group policy. Norbord was responsible for informing the company when an employee was terminated.

When the plan was first offered to Norbord employees, a licensed insurance agent from American General came to Norbord's various mills to explain the plan to employees, provide quotes, and assist with applications for the

plan.  Participation in the plan was voluntary, but the American General plan was the only critical-illness plan Norbord offered its employees.

Employees who enrolled received a policy in their own names, which was mailed to them at their home addresses by American General.  Employees also paid the full cost of premiums.  Norbord advanced the premiums in one monthly lump-sum payment to American General and deducted the cost from enrolled employees' pay.  American General did not compensate Norbord for offering the plan.

Norbord made a pamphlet about the critical-illness plan available to its employees.  American General created the pamphlet, and Norbord's name was not anywhere on it.  Norbord did not include the plan in its cafeteria-plan summary description and did not consider the critical-illness plan part of the package of group-benefit plans offered through Norbord.  Further, Norbord did not maintain enrollment or claim forms or administer claims for the plan.  Norbord listed the toll-free number

for American General on its internal-benefit-enrollment website, but the website had no link to enrollment or claim forms or policy information as it did for group benefits.

On September 20, 2006, Mapp, a Norbord employee, suffered a heart attack that required him to undergo coronary-artery-bypass surgery.  Mapp had previously enrolled in the critical-illness plan.  His understanding was that, under the plan, American General would pay him $ 20,000 in the event that he suffered a heart attack. Mapp submitted a timely claim for benefits, which the insurance company denied in July 2007.  On October 30, 2007, Mapp filed suit in state court, asserting breach of contract and bad faith.

On April 18, 2008, American General removed the case to federal court and moved to dismiss the case on the grounds that Mapp's state-law claims are preempted because the policy is covered by ERISA.  American General contends that this court has removal jurisdiction on the

basis of a federal question, 28 U.S.C. § 1331, and diversity of citizenship.  28 U.S.C. § 1332.

Mapp disputes that the court has federal-question jurisdiction based on ERISA; he argues that the policy falls within a safe-harbor regulation that precludes application of ERISA, and, alternatively, that Norbord did not "establish or maintain" the plan, as is required for ERISA to apply.[1]  Mapp further denies that the court has diversity jurisdiction; he contends that American General has failed to show that the amount in controversy exceeds $ 75,000.

## III. FEDERAL-QUESTION JURISDICTION

A lawsuit that "arises under" federal law may be properly removed to federal court pursuant to 28 U.S.C. §§ 1441, 1331.  Ordinarily, a cause of action arises under federal law only when a plaintiff's "well-pleaded

---

1. Mapp concedes that, if the policy is covered by ERISA, his state law claims are pre-empted and the court has subject-matter jurisdiction on the basis of a federal question.

complaint" raises a federal question.  Metropolitan Life
Ins. Co. v. Taylor, 481 U.S. 58, 65-67 (1987).  However,
because the federal regulatory scheme established by
ERISA "so completely preempts" state law in the area of
employee-benefit plans, an ERISA-preemption defense to a
state-law claim will be sufficient to remove a lawsuit to
federal court.  Id. at 64-67.  Thus, if a plaintiff's
state-law claim "relates to" an ERISA plan within the
meaning of ERISA's preemption provision, 29 U.S.C.
§ 1144(a), the claim is preempted by ERISA and converted
to a federal claim for the purpose of removal
jurisdiction.  Id. at 60, 66.  This effect is known as
ERISA "superpreemption."  Butero v. Royal Maccabees Life
Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir. 1999).

Four elements must be satisfied for ERISA
superpreemption to apply: (1) there must be a relevant
ERISA plan, (2) the plaintiff must have standing to sue
under that plan, (3) the defendant must be an ERISA
entity, and (4) the complaint must seek compensatory

relief similar to that available under ERISA.  <u>Butero</u>,
174 F.3d at 1212.  The primary dispute in this case is
whether the first element is satisfied: whether the plan
is an ERISA plan.

An ERISA plan is either an "employee welfare benefit
plan" or an "employee pension benefit plan." 29 U.S.C.
§ 1002(3). An employee-welfare-benefit plan, the only
type of ERISA plan relevant to this case, is defined in
the statute as:

> "[A]ny plan, fund, or program ...
> established or maintained by an employer
> or by an employee organization, or by
> both, to the extent that such plan,
> fund, or program was established or is
> maintained for the purpose of providing
> for its participants or their
> beneficiaries, through the purchase of
> insurance or otherwise ... medical,
> surgical, or hospital care or benefits,
> or benefits in the event of sickness,
> accident, disability, death, or
> unemployment."

29 U.S.C. § 1002(1).  The Eleventh Circuit Court of
Appeals further defines an employee-welfare-benefit plan
as "(1) a 'plan, fund, or program' (2) established or

maintained (3) by an employer or by an employee
organization, or by both, (4) for the purposes of
providing ... benefits, (5) to participants or their
beneficiaries." <u>Donovan v. Dillingham</u>, 688 F.2d 1367,
1371 (11th Cir. 1982) (<u>en banc</u>).

Mapp argues that the plan was not "established or
maintained" by Norbord.  He also contends that the plan
falls within a "safe harbor" regulation enacted by the
Department of Labor.  29 C.F.R. § 2510.3-1(j).  That
regulation deems that group plans are not employee-
welfare-benefit plans if they meet the following
criteria:

> "(1) No contributions are made by an
> employer or employee organization;
>
> "(2) Participation [in] the program is
> completely voluntary for employees or members;
>
> "(3) The sole functions of the employer
> or employee organization with respect to
> the program are, without endorsing the
> program, to permit the insurer to
> publicize the program to employees or
> members, to collect premiums through
> payroll deductions or dues checkoffs and
> to remit them to the insurer; and

> "(4) The employer or employee
> organization receives no consideration
> in the form of cash or otherwise in
> connection with the program, other than
> reasonable compensation, excluding any
> profit, for administrative services
> actually rendered in connection with
> payroll deductions or dues checkoffs."

29 C.F.R. § 2510.3-1(j).

Because the court need not decide whether the plan was "established or maintained" by Norbord if the plan falls within the safe-harbor regulation, the court takes up that question first.

American General concedes that Norbord did not contribute to premiums, that participation was voluntary, and that Norbord received no consideration in connection with the program. Thus, only the third criterion of the safe-harbor regulation, non-endorsement, is disputed by the parties. Mapp argues that Norbord did not endorse the program and that its sole functions were to collect premiums through payroll deductions and to remit them to American General. American General argues that Norbord's

actions exceeded the limits of the safe-harbor regulation and amounted to an endorsement of the plan.

The requirements for the safe-harbor exception are "strict," Moorman v. Unum Provident Corp., 464 F.3d 1260, 1268 (11th Cir. 2006), and "[t]he regulation explicitly obliges the employer who seeks its safe harbor to refrain from any functions other than permitting the insurer to publicize the program and collecting premiums." Butero, 174 F.3d at 1213-14. An employer endorses a program if it "urges or encourages member participation in the program or engages in activities that would lead a member reasonably to conclude that the program is part of a benefit arrangement established or maintained by the employee organization." Moorman, 464 F.3d at 1268 (citing ERISA Op. Letter No. 94-26A, 1994 WL 369282 (July 11, 1994)); see also Johnson v. Watts Regulator Co., 63 F.3d 1129, 1135 (1st Cir. 1995) (holding that standard is whether "an objectively reasonable employee would conclude on the basis of the

employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package").

In <u>Butero</u>, the Eleventh Circuit found that an employer endorsed a plan where it chose the insurer; decided key terms of the plan, such as portability and amount of coverage; deemed some employees ineligible to participate; incorporated the plan's terms into a summary of plans offered by the employer; and reserved the option to "alter compensation reduction for tax purposes." 174 F.3d at 1213-14.

In <u>Moorman</u>, the appellate court reiterated <u>Butero</u>'s holding that the "accumulation of extraneous functions" by an employer will render the safe harbor inapplicable. 464 F.3d at 1269. The <u>Moorman</u> court found that an employer endorsed a plan where the employer decided on certain eligibility terms, namely, that employees work at least 35 hours a week and that there be a 90-day waiting

14

period; the plan at issue was the only plan of its kind offered by the employer to its employees; the plan was identified in the employee handbook as part of the company's employee benefits; the enrollment forms indicated that the employer was "offering" the plan; the employer assisted with filing claim forms (even though the forms were employer verification forms required by the insurer); and the plan certificate indicated that it would be governed by the laws of the governing jurisdiction, and, to the extent applicable, ERISA.  Id. at 1263.

After carefully reviewing these precedents and the evidence presented by the parties, the court concludes that Norbord has not engaged in activity that forecloses application of the safe-harbor provision.  American General does not contest that participation in the plan was voluntary; that, when the plan was first offered, employees were enrolled by an insurance agent; that employees who enrolled in the plan paid the full cost of

15

their premiums; that Norbord's name did not appear on any literature relating to the plan; that Norbord did not negotiate the terms of any plan; that Norbord did not receive any compensation for offering the plan; that Norbord did not include the plan in its cafeteria-plan summary description; or that Norbord did not maintain enrollment or claim forms or administer claims for the plan.[2]

American General contends, however, that Norbord's premium-payment arrangement amounted to impermissible endorsement or extraneous activity that renders the safe-harbor provision inapplicable. The court disagrees. As noted above, Norbord advanced a monthly single payment to American General on behalf of enrolled employees and was

_____

2. Nothing in the plan referenced ERISA, and the first page of the group policy stated that the plan is "delivered in and governed by" the laws of Alabama. Mapp contends that these facts demonstrate Norbord's intent that ERISA should not govern the policy. American General does not dispute this point; however, it notes, correctly, that courts examine the perception of a reasonable employee, not the intent of the employer, to determine whether a plan falls within the safe-harbor exception. See Moorman, 464 F.3d at 1268.

then reimbursed through payroll deductions.  The safe-harbor provision allows employers to "collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer."  29 C.F.R. § 2510.3-1(j)(3). Although this provision could be read to require employers to collect premiums from employees before paying the insurance company, and not the reverse as was Norbord's monthly practice, the parties have not shown that Norbord's brief monthly fronting of the premiums was sufficiently substantive to distinguish it from what was allowed by the provision.

Two facts remain as to whether Norbord is entitled to the safe harbor: first, Norbord made selections on the application form; and, second, the American General plan was the only critical-illness plan offered to Norbord employees.  Even under the low threshold that will disqualify an employer from taking advantage of the safe-harbor provision, however, these facts are insufficient to disqualify Norbord.  First, it is plain that, to the

17

extent that Norbord made any "selections" on the application form, it did so only because American General required it to do so. Norbord's only alternative would have been to leave the form, which was required to establish a group policy, blank. Unlike the employers in <u>Moorman</u> and <u>Butero</u>, Norbord did not attempt to limit eligibility or exercise any control over who could enroll in the plan; rather, it selected the most inclusive options available on the application form. Thus, Norbord's selections are distinguishable from the "eligibility determinations" employers made in <u>Moorman</u> and <u>Butero</u>.

Second, American General offers no authority suggesting that the lone fact that an employer offers a single plan, without more, amounts to endorsement of that plan. <u>Butero</u> declined to reach the question of whether "picking an insurer by itself could move an employer out of the safe harbor." 174 F.3d at 1213 n.4. The other cases that American General cites rely on additional

18

factors, such as employer-imposed restrictions on eligibility, distribution of plan-related documents bearing the employer's name, and express statements that the plan was governed by ERISA, to support finding that the employer endorsed the plan or assumed impermissible functions. <u>See, e.g.</u>, <u>Moorman</u>, 464 F.3d at 1263; <u>Anderson v. UnumProvident Corp.</u>, 322 F. Supp. 2d 1272, 1277-78 (M.D. Ala. 2002) (Dement, J.), <u>aff'd</u>, 369 F.3d 1257 (11th Cir. 2004). None of these other factors is present here to tip the scale in favor of finding that Norbord endorsed the plan.

In sum, the fact that Norbord offered one group critical-illness policy, filled out a form required to initiate the policy, and forwarded employees' premiums to the insurer offering the policy is not enough to "lead a member reasonably to conclude that the program is part of a benefit arrangement established or maintained by" Norbord. <u>Moorman</u>, 464 F.3d at 1268. Indeed, the court cannot conceive of how Norbord could have done any less

19

to remain in the safe harbor of the regulation while still making a critical-illness plan available to its employees. Norbord did not represent the plan as a Norbord plan or do anything that would suggest to employees that Norbord was endorsing the plan; it did not summarize the plan in company literature for its employees, distribute literature encouraging employees to sign up for the plan, limit eligibility for the plan, or negotiate any terms of the plan.

Thus, the plan falls within the safe harbor and does not qualify as an employee-welfare-benefit plan within the meaning of ERISA. Because Mapp's state-law claims do not "relate to" any ERISA plan, they are not converted to federal claims for the purpose of removal jurisdiction. Accordingly, the court is without subject-matter jurisdiction based on a federal question in this case.

## IV.  DIVERSITY JURISDICTION

In addition to federal-question jurisdiction, however, American General asserts that the court has subject-matter jurisdiction over this case based on diversity of citizenship.

As noted above, diversity jurisdiction exists when the amount in controversy exceeds $ 75,000, exclusive of interest and costs, and the plaintiff and the defendant are citizens of different States. 28 U.S.C. § 1332(a). Here, the parties agree that they are citizens of different States:  Mapp is a citizen of Alabama, and American General is incorporated in Illinois with its principal place of business in New Jersey.  Thus, the sole question is whether the amount in controversy exceeds $ 75,000.

A removing defendant has the burden of proving that the $ 75,000 amount-in-controversy requirement for diversity is met. Leonard v. Enterprise Rent-a-Car, 279 F.3d 967, 972 (11th Cir. 2002).  A defendant may do so by

showing that it is "facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." <u>Williams v. Best Buy Co.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001).  Where, as here, the plaintiff does not specifically allege an amount in controversy or the total amount in damages demanded in the complaint, the removing defendant must prove the amount in controversy by a preponderance of the evidence. <u>Leonard</u>, 279 F.3d at 972.  In this determination, the court may not look beyond the notice of removal and evidence submitted by the parties "relevant to the amount in controversy at the time the case was removed." <u>Id</u>.  If the defendant does not convince the court that the jurisdictional amount is "readily deducible" from the documents before the court, the court must remand to state court. <u>Lowery v. Alabama Power Company</u>, 483 F.3d 1184, 1211 (11th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 2877 (2008).

Mapp's complaint does not specify the total amount of damages sought; the only specific numerical amount he seeks is $ 20,000 in compensatory damages. American General appears to argue that, because Mapp also seeks punitive damages, the $ 75,000 jurisdictional requirement is satisfied. The only evidence that American General offers in support is allegedly "similar" cases where Alabama courts have authorized damage awards greater than the jurisdictional amount. It is questionable "whether such general evidence is ever of much use in establishing the value of claims in any one particular case," Lowery, 483 F.3d at 1221, because "the facts regarding other cases tell us nothing about the value of the claims" in the instant case. Id.[3] Such a concern is particularly valid here, where the complaint and removal documents are not specific enough as to the duration, extent, severity,

_____

3. American General suggests that this court ignore the explicit direction of Lowery because, it argues, Lowery is in tension with prior holdings of the Eleventh Circuit. However, this court has no authority to ignore controlling precedent that is directly on point.

23

or kinds of harms alleged to allow meaningful comparison between this case and the cases that American General offers.  To the extent possible, however, the court has reviewed the cases cited by American General and concludes that they are not sufficiently factually and legally similar to this case such that this court can draw any reasonable conclusions from them.  Thus, the court finds that American General has failed to carry its burden of proving that the amount-in-controversy exceeds $ 75,000, and thus diversity jurisdiction is wanting.


### V.   CONCLUSION

Finally, the conclusion the court reaches today regarding federal-question jurisdiction does not go to the merit of American General's defense that Mapp's claims are preempted by ERISA.  This court's conclusion based on the limited evidence before it is not binding on the state court.  American General may still pursue the ERISA-preemption defense after remand to state court,

and, indeed, after further development of the facts, including an evidentiary hearing, the state court may still find the defense has merit.    See Glasser v. Amalgamated Workers Union Local 88, 806 F.2d 1539, 1540 (11th Cir. 1986); see also Soley v. First National Bank of Commerce, 923 F.2d 406, 408-09 (5th Cir. 1991).


                                  ***


     Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Benjamin Mapp's motion to remand (Doc. No. 10) is granted and that, pursuant to 28 U.S.C. § 1447(c), this cause is remanded to the Circuit Court of Chambers County, Alabama, for lack of subject-matter jurisdiction.

     It is further ORDERED that defendant American General Assurance Company's motion to dismiss (Doc. No. 2) is left to resolution by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 12th day of December, 2008.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE